No. 25-70004

IN THE

# United States Court of Appeals for the Fifth Circuit

DAVID WOOD,

*Plaintiff–Appellant*

v.

RACHEL PATTON, in her official capacity as Assistant Attorney
General,

*Defendant–Appellee*

On Appeal from the United States District Court
For the Western District of Texas, Austin Division
Cause No. 1:24-CV-1058

## APPELLEE'S BRIEF AND OPPOSITION TO MOTION FOR A STAY OF EXECUTION

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

TOMEE HEINING
Acting Chief, Criminal Appeals
Division

RACHEL PATTON
Assistant Attorney General
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
rachel.patton@oag.texas.gov

*Counsel for Defendant–Appellee*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Defendant–Appellee*
    Rachel Patton
    District Attorney Pro Tem

*Counsel for Defendant–Appellee*
    Rachel Patton, Assistant Attorney General
    OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Plaintiff–Appellant*
    David Wood

*Counsel for Plaintiff–Appellant*
    Claire Davis, Naomi Fenwick, Jeremy Schepers, Dallas, Texas
    FEDERAL PUBLIC DEFENDER'S OFFICE, NORTHERN DISTRICT OF TEXAS, CAPITAL HABEAS UNIT

    Gregory Wiercioch

                        s/ Rachel Patton
                        RACHEL PATTON
                        Assistant Attorney General
                            *Counsel of Record*

                        *Counsel for Defendants–Appellee*

i

## STATEMENT REGARDING ORAL ARGUMENT

Because there is little time before Plaintiff–Appellant's scheduled execution, and because the parties' briefs adequately lay out the facts and legal arguments, the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................ ii

TABLE OF CONTENTS ........................................................ iii

TABLE OF AUTHORITIES ................................................... v

INTRODUCTION ............................................................... 1

STATEMENT OF THE ISSUES ............................................ 4

STATEMENT OF THE CASE ............................................... 4

    I.    Facts of the Crime ................................................ 4

    II.    Trial, Direct Appeal, and Postconviction Proceedings . ............................................................................. 8

SUMMARY OF THE ARGUMENT ...................................... 16

STANDARD OF REVIEW .................................................. 18

ARGUMENT ................................................................... 18

    I.    This Court Should Affirm the Lower Court's Judgment Dismissing Wood's Claims. ........................... 18

        A.    Federal Rule of Civil Procedure 12(b)(6) .... 20

        B.    The *Osborne* standard ................................ 21

        C.    Wood's "illusory" claim is baseless. ............. 22

        D.    Wood's claim challenging Chapter 64's unreasonable-delay element is baseless. .... 32

    II.    This Court Should Deny Wood's Request for a Stay of Execution ...................................................... 44

CONCLUSION ................................................................ 48

**CERTIFICATE OF SERVICE** ...............................................................**49**

**CERTIFICATE OF COMPLIANCE**.....................................................**50**

**ELECTRONIC CASE FILING CERTIFICATIONS** .........................**51**

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) ......................................18

*Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257 (11th Cir. 2012) ...19, 34

*Ambriati v. State*, 2015 WL 6998616 (Tex. App—Beaumont Nov. 12, 2015)................................................................................................30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................20

*Atkins v. Virginia*, 536 U.S. 304 (2002) ..............................................8, 11

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ..................................................44

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................20, 21, 32

*Bucklew v. Precythe*, 587 U.S. 119 (2019) ...............................................46

*Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012) ......................................19

*Cooper v. State*, 673 S.W.3d 724 (Tex. Crim. App. 2023) .......................27

*Cromartie v. Shealy*, 941 F.3d 1244 (11th Cir. 2019) ..........................1, 37

*Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237 (11th Cir. 2010) ............................................................................34

*Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009).......................................................................................Passim

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)... ..................................................................................................................3

*Evans v. State*, 628 S.W.3d 358 (Tex. App—Ft. Worth 2021) ................30

*Ex parte Wood*, 2009 WL 10690712 (Tex. Crim. App. Aug. 19, 2009)......9

*Filer v. Donley*, 690 F.3d 643 (5th Cir. 2012)...........................................18

*Garcia v. Castillo*, 431 F. App'x 350 (5th Cir. 2011)...............................22

*Gomez v. U.S. Dist. Court for Northern Dist of California*, 503 U.S. 653 (1992)..................................................................................................45

*Gutierrez v. Saenz*, 145 S. Ct. 118 (2024)............................................2, 24

*Gutierrez v. Saenz,* 93 F.4th 267 (5th Cir. 2024) ................................2, 23

*Gutierrez v. Saenz*, 565 F. Supp. 3d 892 (S.D. Tex. 2021) ............2, 23, 24

*Hill v. McDonough*, 547 U.S. 573 (2006).....................................18, 44, 46

*Hilton v. Braunskill*, 481 U.S. 770 (1987)................................................45

*In re Katrina Canal Breaches Litig*, 495 F.3d 191 (5th Cir. 2007) ........20

*In re Pruett*, 784 F.3d 287 (5th Cir. 2015)................................................20

*In re Robertson, Sr.*, 2021 WL 1312589 (Tex. App.—Austin Apr. 8, 2021) ...................................................................................................30

*In re Wood*, 648 Fed.Appx. 388 (5th Cir. 2016) ........................................8

*Kiffe v. State*, 361 S.W.3d 104 (Tex. App. Houston [1st Dist.] 2011) .....29

*Leal v. State*, 303 S.W.3d 292 (Tex. Crim. App. 2009) ...........................37

*Lookingbill v. Cockrell*, 293 F.3d 256 (5th Cir. 2002)............................41

*Manning v. Epps*, 688 F.3d 177 (5th Cir. 2012) .....................................41

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) ...................................................................................20

*McKithen v. Brown*, 626 F.3d 143 (2d Cir. 2010) ....................................34

*Medina v. California*, 505 U.S. 437 (1992) .......................................22, 33

*Nelson v. Campbell*, 541 U.S. 637 (2004)........................................44, 45

*Nken v. Holder*, 556 U.S. 418 (2009)...............................................45, 46

*Pruett v. Choate*, 711 F. App'x 203 (5th Cir. 2017).................................19

*Pruett v. State*, 2017 WL 1245431 (Tex. Crim. App. Apr. 5, 2017) ........27

*Raby v. State*, 2005 WL 8154134 (Tex. Crim. App. June 29, 2005) .......... ...............................................................................................................42, 43

*Reed v. Goertz*, 598 U.S. 230 (2023) .......................................................19

*Reed v. State*, 541 S.W.3d 759 (Tex. Crim. App. 2017).........38, 39, 40, 44

*Rhines v. Weber*, 544 U.S. 269 (2005) ...............................................17, 40

*Rivera v. State*, 89 S.W.3d 55 (Tex. Crim. App. 2002)............................26

*Rogers v. Tennessee*, 532 U.S. 451 (2001) ..............................................43

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ...................................3

*Routier v. State*, 273 S.W.3d 241..............................................................42

*Skinner v. State*, 122 S.W.3d 808 (Tex. Crim. App. 2003).....................42

*Skinner v. State*, 665 S.W.3d 1 (Tex. Crim. App. 2022)..........................31

*Skinner v. Switzer*, 562 U.S. 521 (2011) .................................................22

*State v. Long*, 2015 WL 2353017 (Tex. App.—Waco, May 14, 2015) .....27

*State v. Stephens*, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021)..15

*Steph v. Scott*, 840 F.2d 267 (5th Cir. 1988) ............................................19

*Swearingen v. State*, 303 S.W.3d 728 (Tex. Crim. App. 2010) ..............40

*United States v. Salerno*, 481 U.S. 739 (1987)........................................27

*Walker v. Epps*, 287 F. App'x 371 (5th Cir. 2008)..................................45

*Wilson v. State*, 2003 WL 1821465 (Tex. Crim. App. Mar. 26, 2003).....27

*Wood v. Dretke*, 2006 WL 1519969 (N.D. Tex. June 2, 2006)...................8

*Wood v. Quarterman*, 552 U.S. 1314 (2008) .......................................9, 43

*Wood v. State*, 693 S.W.3d 308 (Tex. Crim. App. 2024).................Passim

*Wood v. Texas*, 2025 WL 581671 (2025)..................................................15

**Statutes**

18 U.S.C. § 3600(a)(10)(B).......................................................................33

42 U.S.C. § 1983 ........................................................................................2

Tex. Code Crim. Proc. art.  64.01 ...........................................................27

Tex. Code Crim. Proc. art. 64.01(a-1) .....................................................26

Tex. Code Crim. Proc. art. 64.03...............................................................27

Tex. Code Crim. Proc. art. 64.03(a)(1)(A) ...............................................22

Tex. Code Crim. Proc. art. 64.03(a)(2)(A) ................................................ 23

Tex. Code Crim. Proc. art. 64.03(a)(2)(B) ......................................... 33, 37

Tex. Code Crim. Proc. art. 64.03(a)–(e).................................................. 26

Tex. Code Crim. Proc. art. 64.05 ............................................... 25, 30, 36

Texas Code of Criminal Procedure Article 38.43.................................... 31

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................ 20

Federal Rules of Appellate Procedure Rule 32(a)(7)(B) ......................... 50

# INTRODUCTION

"Every court of appeals to have applied the *Osborne*[1] test to a state's procedure for postconviction DNA testing has upheld the constitutionality of it." *Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019).

Almost forty years ago, Plaintiff–Appellant David Wood killed three women and three teenaged girls and buried their bodies in a desert outside El Paso. Wood was convicted of capital murder and sentenced to death for these crimes in 1992. He engaged in a dilatory course of piecemeal litigation over the following decades to unreasonably delay the execution of his sentence. *See Wood v. State*, 693 S.W.3d 308, 339–40 (Tex. Crim. App. 2024). That piecemeal litigation included several motions Wood filed under Chapter 64 of the Texas Code of Criminal Procedure (Chapter 64) for postconviction DNA testing. *See id.*

Although Chapter 64 was enacted in 2001, *id.* at 330, Wood did not file a motion seeking postconviction DNA testing until 2010, *id.* He then

---

[1]    *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) ("Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided.").

1

purposefully "doled out" additional Chapter 64 motions and ancillary motions to delay the Chapter 64 proceedings and the execution of his sentence. *Id*. at 337–38. The state trial court granted Wood's first Chapter 64 motion in 2010, *id*. at 311, but denied his remaining motions in 2022, *id*. at 331–36. The Texas Court of Criminal Appeals (CCA) recognized the plain import of Wood's piecemeal litigation he engaged in for more than a decade—that it was for the purpose of unreasonable delay. *Id*. at 339–40. Accordingly, the CCA affirmed the state trial court's denial of Wood's Chapter 64 motions. *Id*.

Wood then filed in the lower court a complaint pursuant to 42 U.S.C. § 1983 alleging Chapter 64 violated procedural due process. ROA.6. Specifically, Wood claimed that (1) the CCA's authoritative construction of Chapter 64 rendered it "an illusory right that cannot be reasonably obtained," ROA.7 (citing *Gutierrez v. Saenz*, 565 F. Supp. 3d 892, 908 (S.D. Tex. 2021), *vacated*, 93 F.4th 267 (5th Cir. 2024), *cert. granted*, 145 S. Ct. 118, 118–19 (2024)), and (2) the CCA interpreted Chapter 64's unreasonable-delay element "in a new and novel way" in his case, ROA.7. Wood also filed a motion for a preliminary injunction seeking a stay of his scheduled execution. ROA.2183–2213. Defendant

2

Rachel Patton, District Attorney Pro Tem,[2] filed a motion to dismiss the complaint for lack of jurisdiction and failure to state a claim on which relief could be granted, ROA.2077–2123, and filed an opposition to Wood's request for a stay of execution, ROA.2219–42.

The lower court dismissed Wood's complaint and denied his motion for a preliminary injunction. ROA.2281. In doing so, the district court held Wood had standing to bring his claims because he sought a declaratory judgment that Chapter 64 violates procedural due process rather than an order compelling DNA testing, ROA.2271–72, Defendant was not entitled to immunity under the Eleventh Amendment because Wood explicitly sought *only* declaratory and injunctive relief, ROA.2272–73, and Wood's claims were not barred by the *Rooker-Feldman*[3] doctrine because he challenged Chapter 64 as authoritatively construed by the CCA rather than the adverse state court judgment, ROA.2273–74. The district court held, however, that Wood's claims failed to state a claim on which relief could be granted. ROA.2276–78. As to Wood's first claim, the

---

[2]     Defendant–Appellee is listed in this case as Rachel Patton, in her official capacity as Assistant Attorney General. However, Defendant was not sued in that capacity but rather as the District Attorney Pro Tem. ROA.5, 8.

[3]     *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

court held Wood failed to show Chapter 64 is an illusory right. ROA.2276. As to the second claim, the court held Wood failed to show the CCA's interpretation and application in his case of Chapter 64's unreasonable-delay element was contrary to the CCA's precedent. ROA.2277. Moreover, the district court held that Chapter 64's unreasonable-delay element was not inconsistent with any principle of fundamental fairness. ROA.2277–78.

The district court's dismissal of Wood's complaint was indisputably proper, and its denial of Wood's request for a stay of execution was no abuse of discretion. This Court should affirm the district court's dismissal of Wood's complaint and deny a stay of execution.

## STATEMENT OF THE ISSUES

1.   Whether the district court properly dismissed Wood's meritless claims; and

2.   Whether the district court abused its discretion in denying Wood a stay of execution.

## STATEMENT OF THE CASE

### I.   Facts of the Crime

Six women disappeared from the El Paso area between May 13, 1987 and August 27, 1987. Between September 4,

1987 and March 14, 1988, the bodies of these women were found buried in shallow graves in the same desert area northeast of El Paso....The first body discovered was that of Rosa Casio, age 23, who worked in a topless club. On the evening of her disappearance she was seen holding hands with a man who could have been [Wood]. The second body found was that of Karen Baker, age 21, who lived at a hotel on Dyer. The day of her disappearance, she was seen by Charles Lloyd riding a red Harley Davidson with [Wood]. She told Lloyd that [Wood] would be back to pick her up for a date at midnight. At midnight, Lloyd saw a man pull up in a white or beige pickup. The man got out and walked toward Karen, who was standing nearby. This was the last time Karen was seen. The third body recovered was that of Dawn Smith, age 14. This victim was well-acquainted with [Wood] and there was testimony that she would have accepted a ride with him. The fourth body was that of Desiree Wheatley, age 15. Desiree was last seen near a Circle K store, getting into the passenger side of a small beige truck driven by [Wood]. The fifth body was that of Angelica Frausto, age 17, who was a dancer at a topless bar. She was last seen going for a ride with a man on a red Harley-Davidson. The sixth body recovered was that of Ivy Williams, age 23, a prostitute and exotic dancer. She was seen with [Wood] shortly before her disappearance.

Five of the bodies were located in the same one by one-half mile area; the sixth was three-quarters of a mile away. All of the bodies were approximately 30 to 40 yards from one of the dirt roadways in the desert. Four of the bodies were in various states of undress, indicating that the killer had sexually abused them. [Wood]'s former girlfriend and others testified that he owned a beige pickup. He also drove a red Harley-Davidson. [Wood]'s girlfriend testified that he had several tattoos on his body and that he owned both a burnt orange blanket and some shovels, all of which he kept in the back of his pickup. A forensic chemist testified that orange fibers found on the clothing of one of the victims matched

orange fibers taken from a vacuum cleaner bag which [Wood] and his girlfriend had left in their old apartment.

Randy Wells testified that he shared a cell with [Wood] for two and a half months in 1989. [Wood] told him about the murders, describing his victims as topless dancers or prostitutes. [Wood] told him that he would lure each girl into his pickup with an offer of drugs. Then he would drive out to the desert, tie her to his truck and dig a grave. Next he would tie the victim to a tree and rape her. Wells also testified that he covered over some of [Wood]'s tattoos with new ones. He said [Wood] told him he wanted the tattoos covered up because one girl who had seen the tattoos had gotten away from him.

Both Karen Baker and Desiree Wheatley were with [Wood] when they were last seen alive. Ivy Williams was seen with [Wood] shortly before her disappearance. In the case of the victim Desiree Wheatley, a witness who knew [Wood] before the incident identified him as the man driving the pickup that Wheatley climbed into. All of the murders took place between May 30, 1987 and August 28, 1987.

*Wood v. State,* No. 71,594, slip op. at 3–5 (Tex. Crim. App. Dec. 13, 1995).

The CCA also detailed in its opinion testimony given at the guilt phase of the trial by the victim of an extraneous offense committed by Wood in July 1987:

[Judith] Kelly was walking outside of a Circle K located on Kemp and Dyer in the northeast part of El Paso. A tattooed man driving a tan pickup stopped and asked her if she needed a ride. Kelly identified [Wood] in court as the driver of the pickup. She accepted his offer, climbed into his vehicle, and told [Wood] where she was going. When [Wood] passed up the turn she had directed him to take, he explained that he would

6

take her back after first stopping by the house of a friend. He stopped at an apartment complex and went inside. When he returned about three minutes later, a piece of narrow rope was hanging from one of his pockets.

[Wood] drove northeast of town toward the desert, in the direction opposite Kelly's friend's apartment. He explained that he was going there to recover some cocaine he had buried in the desert. He stopped first at a gate in the desert area east of Dyer. Finding the gate locked, he crossed back west into the desert area located between Dyer and McCombs. After driving around the area for a good while, [Wood] finally stopped his truck, got out, and ordered Kelly out as well. She saw him get a "brownish red" blanket and a shovel from the back of his truck and take them behind some bushes. After tying her to the front of his truck with the rope, [Wood] proceeded to dig a hole behind the bushes. Ten or fifteen minutes later, he returned with the blanket and began ripping her clothes and forcing her to the ground. Suddenly hearing voices, [Wood] ordered Kelly to get back in the truck.

[Wood] drove across to the desert on the west side of McCombs, where he stopped his vehicle again. He ordered her out, spread the blanket on the ground and forced her to remover her clothes. He gagged her and tied her to a bush. While he had her on the ground attempting to rape her, he ordered her to say that she was 13; she refused to do so, saying she was 27 or 28 years old. Ultimately, [Wood] did rape Kelly. Immediately afterwards, [Wood] stated that he heard voices. He hastily threw the blanket and Kelly's clothing into the back of his truck and drove away, leaving her naked in the desert. His final words to her were, "[A]lways remember, I'm free."

*Id.* at 2–3.

## II.   Trial, Direct Appeal, and Postconviction Proceedings

David Wood was convicted and sentenced to death for the murder of six women in El Paso County, Texas in 1992. The CCA affirmed his conviction and sentence on direct appeal. *Wood v. State*, No. 71,594 (Tex. Crim. App. Dec. 13, 1995). Wood filed his first state application for writ of habeas corpus on December 19, 1997, and the CCA denied relief in 2001. *Ex Parte Wood*, No. 45,746-01 (Tex. Crim. App. Sept. 19, 2001).

Wood filed his initial federal petition for writ of habeas corpus on May 6, 2002. Later, on October 2, 2002, Wood filed an amended petition in which he raised the three claims exhausted in his state habeas application as well as several dozen unexhausted claims. The Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304 (2002), after the filing of Wood's original federal petition but before he filed his amended federal petition. However, Wood did not raise an *Atkins* claim in the amended petition, nor did he seek to amend the petition a second time to include an *Atkins* claim. The district court denied each claim on the merits and subsequently denied a certificate of appealability (COA). *Wood v. Dretke*, No. 3:01-CV-2103-L, 2006 WL 1519969, at *19 (N.D. Tex. June 2, 2006). Wood filed a notice of appeal and applied for a COA. A COA was denied,

and the Supreme Court denied certiorari on April 14, 2008. *Wood v. Quarterman*, 503 F.3d 408 (5th Cir. 2007); *Wood v. Quarterman*, 552 U.S. 1314 (2008).

Litigation complete, the state trial court scheduled Wood's execution for August 20, 2009. Two days before the scheduled execution Wood filed a subsequent application for writ of habeas corpus and a motion for stay of execution. Wood was granted a stay of execution so that he could raise an *Atkins* claim in the trial court. *Ex parte Wood*, No. WR-45,746-02, 2009 WL 10690712, at *1 (Tex. Crim. App. Aug. 19, 2009).

Eighteen years after his conviction and sentence, on November 1, 2010, David Wood filed his first motion for DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. ROA.79. Wood's *Atkins* claim was being litigated in the state district court, and Wood asked the State to agree to DNA testing of evidence that was previously tested for purposes of Wood's trial. ROA.79. The State agreed, and the Court granted Wood's motion for DNA testing. ROA.79. Wood unsuccessfully attempted to stay the *Atkins* litigation until the DNA testing could be completed. ROA.172. Wood asked the court to reconsider the stay while additional attorneys who had been appointed to represent

him also asked for a ninety-day extension of *all* deadlines. *See* ROA.193. The court refused to grant an indefinite stay but agreed to a ninety-day extension. *See* ROA.193. However, the judge stated that Wood was engaging in dilatory tactics and that Wood was seeking DNA testing for that purpose. *See* ROA.195, 508. The *Atkins* hearing was rescheduled for June 20, 2011, and Wood had until February 15, 2011, to turn over his expert reports. *See* ROA.195.

In early January 2011, the case was transferred from Judge Peca to Judge Bert Richardson. *See* ROA.349. Before Wood's February 15 deadline, Judge Richardson informed Wood's counsel that he would be willing to extend the deadline for turning over expert reports to some point shortly after an upcoming scheduling hearing. *See* ROA.349. On February 24, 2011, Wood filed a supplemental motion for DNA testing. ROA.180. Wood sought to test evidence that had not been previously tested: fingernails from the victim Angie Frausto. ROA.181. The State opposed this motion. ROA.187.

Wood continued to attempt to delay the *Atkins* case and repeatedly ignored deadlines to turn over his expert reports. *See* ROA.350, 508. During the week of August 8, 2011, the parties met in El Paso for a

hearing to address the results of the DNA testing and to set a hearing date for the *Atkins* claim. *See* ROA.350. At the August hearing, the parties agreed to begin the *Atkins* hearing on October 11, 2011. *See* ROA.350. Following the August hearing, Judge Richardson entered findings that the results of the DNA testing were not exculpatory. ROA.232.

On August 19, 2011, Wood informed the State that, despite his multiple extensions and missed deadlines, he would not be relying on any experts for the upcoming *Atkins* hearing. ROA.350. On October 11, 2011, four days before the *Atkins* hearing and over a month after the amendments to Chapter 64 went into effect, Wood filed a formal motion for DNA testing under Chapter 64 seeking to test more than sixty-nine items of evidence. ROA.233. The trial court agreed to appoint an expert, William Watson, to assist Wood in determining what evidence may be available for testing. ROA.507–11. Years passed without any word from Wood until the trial court announced that if no DNA issues were going to be pursued an execution date would be set. *See* ROA.531–32.

Following the court's admonition, Wood filed a hastily drafted two-page motion for DNA testing on April 3, 2015. ROA.544–45. The State

filed an opposition to this motion on April 7, 2015. ROA.529. On April 30, 2015, Dr. Watson submitted a letter to the court stating that he had traveled to El Paso and reviewed the evidence. ROA.580. He then addressed which items of evidence he believed might contain biological material. ROA.581. The trial court did not enter an order scheduling Wood's execution and on September 1, 2015, additional amendments to Chapter 64 went into effect. On November 2, 2015, Wood filed a motion for the court to create a profile of an alternative suspect and a motion asking the court to unseal evidence pertaining to a body that was discovered in the desert east of El Paso during Wood's trial. ROA.619, 710.

At this point, a hearing on DNA issues was tentatively set for November 12, 2015, although it did not occur at that time. *See* ROA.763. Regardless, Wood filed the motion less than two weeks before the tentative date, and seven months after the court's admonitions to Wood.

On December 11, 2015, the State filed its response to Wood's motion to create a DNA profile for an alternate suspect. ROA.761. The State filed an advisory on August 10, 2016, informing the court that the discovered

body was that of a Hispanic male and was unrelated to the desert murders. ROA.840.

On August 19, 2016, Wood filed a "Motion to Compel Attorney General to Disclose Crime Stopper's Tip about Alternative Suspect." ROA.863. Next, on September 23, 2016, Wood filed a "Motion to Mitigate Harm Caused By State's Loss or Destruction of Potentially Exculpatory Biological Evidence." ROA.907. Wood then filed a "Motion to Compel State to Disclose Correspondence between State and Jailhouse Informant James Carl Sweeney." ROA.963. Finally, on January 31, 2017, Wood filed a "Motion to Compel Disclosure of *Brady* Material Related to Police Misconduct." ROA.1029. On February 8, 2017, the State filed a response to Wood's three motions to compel, asserting that the court lacked jurisdiction to consider these motions. ROA.1178.

A hearing to address the DNA issues was scheduled for March 8, 2017. *See* ROA.1331. On March 3, 2017—a mere five days before the hearing and approximately a year-and-a-half after Chapter 64 was amended—Wood submitted to the trial court a motion in excess of sixty pages for postconviction DNA testing under Chapter 64. ROA.1187–1246. In this motion, Wood asked the Court to test items that had never been

13

considered and were not included in any of his other motions for postconviction DNA testing. ROA.1187–1246.

Then, after the hearing was held on March 8, 2017, on April 18, 2017, Wood filed a motion seeking to disqualify Judge Richardson from the case, claiming that the judge "tied his success in the election for a seat on the CCA to a particular outcome in David Wood's death penalty case." ROA.1276. The motion was filed more than two years after Judge Richardson was elected to the CCA and nearly four years after Judge Richardson found that Wood was not intellectually disabled. *See* ROA.1329. Presiding Judge Stephen Ables denied Wood's motion on June 12, 2017. ROA.1430. The CCA denied Wood's petition for leave to file a writ of mandamus on the issue on July 26, 2017. Notice, *In re Wood*, No. WR-45,746-03 (Tex. Crim. App. July 26, 2017).

Back in the trial court, on December 4, 2017, Wood filed a motion to disqualify the Attorney General's office as the District Attorney Pro Tem in this case. ROA.1431. On March 3, 2022, Judge Richardson denied Wood's motions for DNA testing, to mitigate harm, and to disqualify the Attorney General's office. ROA.1518–21, 1523.

On March 18, 2022, Wood filed another motion to disqualify the Attorney General's office as District Attorney Pro Tem. ROA.1525. Ten days later, Wood filed a motion to rescind the DNA testing order that was entered on March 3, 2022. ROA.1545. Wood wanted the trial court to rescind its orders to

> await the decision of the Court of Criminal Appeals on the petition for rehearing in *State v. Stephens*, -- S.W.3d --,2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021), before ruling on the State's Proposed Order Denying DNA Motions, the State's Proposed Execution Warrant, and the Defendant's Motion to Terminate Assistant Attorney General as Attorney Pro Tem.

ROA.1545. The trial court did not act on Wood's motion. The CCA affirmed the trial court's denial on appeal. *Wood v. State*, 693 S.W.3d 308, 322–40 (Tex. Crim. App. 2024). Wood filed a motion for rehearing which was denied by the CCA on August 21, 2024. *See id.* On February 24, 2025, the Supreme Court denied Wood's request for certiorari review of the CCA's opinion affirming the trial court's denial of DNA testing. *Wood v. Texas*, –S.Ct. –, 2025 WL 581671 (2025).

On August 15, 2024, the 371st District Court of El Paso County, Texas entered an order setting Wood's execution date for March 13, 2025.

On December 11, 2024, Wood filed, in the trial court, a motion for disclosure of grand jury testimony in his capital murder case and a

motion requesting that attorney Gregory Wiercioch be appointed to represent Wood in the state trial court. On January 24, 2025, the trial court granted the motion to appoint counsel but denied the motion for disclosure of grand jury testimony. Order, *Wood v. State*, No. 58,486-171 (171st Jud. Dist. Ct. El Paso County, Tex. Jan. 24, 2025).Wood filed in the lower court a civil rights complaint and a motion for a preliminary injunction requesting a stay of execution. ROA.5–29, 2183–2213. The court dismissed the complaint for failing to state a claim on which relief could be granted, and it denied Wood's request for a stay of execution. ROA.2265–82. Wood appealed the lower court's judgment and its order denying a stay of execution. The instant Appellee's Brief and Opposition to Motion for a Stay of Execution follows.

## SUMMARY OF THE ARGUMENT

The district court's decision was unquestionably correct, and its denial of a stay of execution was no abuse of discretion. This Court should affirm the district court's dismissal of Wood's complaint and affirm the court's denial of a stay of execution. Indeed, no court of appeals has held that a state's procedure for postconviction DNA testing violates *Osborne*, and Wood provides no reason his should be the first such case.

Wood's first claim, that postconviction DNA testing is an "illusory" right in Texas, was utterly unsupported. The district court correctly concluded Wood failed to demonstrate it is impossible to obtain postconviction DNA testing in Texas. Wood's second claim, that the CCA interpreted Chapter 64's unreasonable-delay element in a "novel" way in his case, was a blatant attempt at an end-run around the *Rooker-Feldman* doctrine,[4] and it failed to demonstrate a procedural due process violation in any event. Consequently, the district court properly dismissed Wood's complaint for failing to state a claim on which relief could be granted.

The district court's denial of a stay of execution was no abuse of discretion, most importantly because he was not entitled to such extraordinary relief to pursue claims that cannot succeed on the merits. Moreover, the public's interest in enforcing its valid criminal judgment outweighs Wood's request for even further delay. Wood fails to make the case for a stay, and his motion is merely a meritless attempt to delay imposition of his well-deserved sentence. *See Rhines v. Weber*, 544 U.S.

---

[4]     The district court found Wood's claim was not barred by *Rooker-Feldman*. ROA.2273–74.

269, 277–78 (2005) (it is no secret that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death."). Indeed, a stay of execution is an equitable remedy, *see Hill v. McDonough*, 547 U.S. 573, 584 (2006), and here the equities favor the State. This Court should therefore uphold the district court's decision to deny any stay of execution and refuse to issue any of its own.

## STANDARD OF REVIEW

A district court's legal conclusions are reviewed de novo. *Filer v. Donley*, 690 F.3d 643, 646 (5th Cir. 2012). A district court's decision concerning a stay of execution is reviewed for an abuse of discretion. *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012).

## ARGUMENT

### I.    This Court Should Affirm the Lower Court's Judgment Dismissing Wood's Claims.

Wood's complaint raised two claims: (1) that the CCA's authoritative construction of Chapter 64 rendered it an "illusory" right; and (2) that the CCA applied Chapter 64's unreasonable-delay element in a "novel" way in his case that deprived him of notice. ROA.19–27. The district court dismissed Wood's complaint because it failed to raise a

claim on which relief could be granted. ROA.2281. This Court should

affirm because the district court's judgment was plainly correct.[5]

---

[5]    In addition to being facially meritless, Defendant maintains that Wood's claims were subject to dismissal for lack of subject-matter jurisdiction. Wood lacked standing because, in the absence of a proper due process claim, his "dressed-up allegations" amounted to nothing more than claims that the CCA should be directed to apply Texas law properly. *Pruett v. Choate*, 711 F. App'x 203, 206 nn.9–10 (5th Cir. 2017). This is particularly true with respect to Wood's second claim alleging the CCA interpreted Chapter 64's unreasonable-delay element in a "novel" way in his case, which was, at bottom, an inappropriate as-applied challenge to Chapter 64. Unlike the Supreme Court's holding in *Reed v. Goertz*, 598 U.S. 230, 235 (2023), Wood's second claim was plainly an attempt at an end-run around the *Rooker-Feldman* doctrine. Indeed, if it were otherwise, any application of law to facts by a state court could be inappropriately recontextualized by a plaintiff as "novel" to avoid the obvious implication that the claim attacks the state court judgment. *See, e.g., Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262–64 (11th Cir. 2012) (barring under the *Rooker-Feldman* doctrine a "procedural due process challenge [that] boil[ed] down to a claim that the state court judgment itself caused [the] constitutional injury by arbitrarily denying him access to the physical evidence he seeks"); *Cooper v. Ramos*, 704 F.3d 772, 780–81 (9th Cir. 2012); *Steph v. Scott*, 840 F.2d 267, 270 (5th Cir. 1988) (a federal court cannot entertain a collateral attack on a state court judgment unless the state court lacked jurisdiction or the state court lacked the capacity to act as a court). Moreover, contrary to the district court's conclusion, ROA.2271, Wood's claims failed for lack of redressability. That is because (1) Wood's first claim failed even to specifically allege *how* any provision of Chapter 64 was violative of a fundamental principle of justice, *see* ROA.2176, and (2) because a declaratory judgment addressing Wood's claims would not make it significantly more likely that Defendant will agree to release evidence for DNA testing where Wood's Chapter 64 motions were inadequate for reasons wholly apart from the challenges he raises in this Court, *see, e.g.,* ROA.332–47, 765–80, 1379–86, 1406–13. Indeed, Wood's broad claim that the right to postconviction DNA testing in Texas is "illusory" did not allege that Chapter 64 is defective in any particular way and, indeed, Wood admits inmates have obtained postconviction DNA testing under Chapter 64, Appellant's Br. 23. This underscores the absence of any possible effectual relief with respect to this

## A.    Federal Rule of Civil Procedure 12(b)(6).

In analyzing a claim under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Accordingly, "[f]actual allegations must be enough to

---

claim and that the actual relief Wood seeks is an order compelling the CCA to grant him testing. Additionally, to the extent Wood asked the lower court for a permanent stay of execution, ROA.28, the request transformed his complaint into a successive federal habeas action. *See In re Pruett*, 784 F.3d 287, 290 (5th Cir. 2015) (plaintiff's § 1983 action challenging Chapter 64 was in fact a successive habeas petition because he was "essentially asking for an indefinite stay of execution based on nothing but speculation").

raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555). It is insufficient, then, to plead facts that are merely consistent with wrongful conduct; a plaintiff must instead plead facts that plausibly suggest that he or she is actually entitled to relief. *Twombly*, 550 U.S. at 556–57. Further, the pleading must contain something more than a recitation of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true. *Id.*

## B.    The *Osborne* standard

Convicted individuals have no substantive constitutional right to postconviction DNA testing, but if a state provides access, the procedures must satisfy procedural due process. *See Osborne*, 557 U.S. at 69, 72–74. However, a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* at 68. Thus, a state "has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69.

A plaintiff challenging a state's postconviction DNA testing procedures must demonstrate that "the postconviction relief procedures .

. . are fundamentally inadequate to vindicate the substantive rights provided" such that the procedures "'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 446 (1992)). The Supreme Court has "left slim room for the prisoner to show that the governing state law denies him procedural due process." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011); *Garcia v. Castillo*, 431 F. App'x 350, 353 (5th Cir. 2011).

### C.    Wood's "illusory" claim is baseless.

Wood claimed that the CCA's construction of Chapter 64 violated due process because it rendered the right to postconviction DNA testing an illusion. ROA.19–21. The claim failed on its face because it was not based on any alleged defect in the statute or on any particular authoritative construction of it by the CCA. ROA.20–21. Nor did Wood even attempt to satisfy his burden under *Osborne* to show that its procedures were inconsistent with any recognized principle of fundamental fairness. 557 U.S. at 70. Wood did not, for example, allege that Chapter 64's chain of custody requirement, Tex. Code Crim. Proc. art. 64.03(a)(1)(A), was too stringent, or the materiality standard, Tex.

Code Crim. Proc. art. 64.03(a)(2)(A), too burdensome. Instead, Wood complained generally that the CCA rarely grants DNA testing under Chapter 64 and has not done so in the last fifteen years. ROA.20. But without a showing that a particular provision of the statute was fundamentally inadequate or violated a fundamental principle of justice, Wood failed even to state a plausible claim for relief. *See Osborne*, 557 U.S. at 69, 72–74.

Rather than the controlling Supreme Court precedent in *Osborne*, Wood relied on the now-vacated Southern District's opinion in *Gutierrez v. Saenz*, 565 F. Supp. 3d 892, 908 (S.D. Tex. 2021). ROA.19–20. But *Gutierrez* has no bearing on this case at all. First, it has no legal force because it was vacated by the Fifth Circuit, *Gutierrez v. Saenz*, 93 F.4th 267, 275 (5th Cir. 2024), and the complaint has since been dismissed by the district court,[6] Order of Dismissal, *Gutierrez v. Saenz, et al.*, No. 1:19-CV-185 (S.D. Tex. June 18, 2024), ECF No. 216.[7] Second, *Gutierrez* was

---

[6]    The United States Supreme Court granted certiorari in *Gutierrez* to review the Fifth Circuit's holding that the plaintiff in that case lacked standing. *Gutierrez v. Saenz*, 145 S. Ct. 118, 118–19 (2024).

[7]    Even if the district court's opinion in *Gutierrez* were persuasive authority despite being vacated, it should be noted the court rejected the plaintiff's claim that Chapter 64's materiality standard was so burdensome as to make testing an illusory right. *Gutierrez*, 565 F. Supp. 3d at 908–09 ("[Gutierrez] has not

based on an entirely different factual basis. The district court's judgment in *Gutierrez* was based on the fact that Chapter 64 does not provide for postconviction DNA testing to address punishment-phase issues, which purportedly rendered Texas's *subsequent habeas relief provision*—not Chapter 64—an illusory right, a matter that is irrelevant here. *Gutierrez*, 565 F. Supp. 3d at 910.

Wood asserts that the Supreme Court in *Gutierrez* is currently reviewing a "very similar question" as the merits of his illusoriness claim. Appellant's Br. 28–29. But the district court held Wood had standing and dismissed Wood's complaint on the merits; the Supreme Court in *Gutierrez* is currently considering *only* the Fifth Circuit's threshold ruling in that case that the plaintiff lacked standing. *See* Pet. Cert. ii, *Gutierrez v. Saenz, et al.*, No. 23-7809 (June 25, 2024). Wood's disingenuous effort to tie the merits of his first claim to the standing issue in *Gutierrez* is nothing but his latest attempt to secure delay of the execution of his sentence. In any event, Defendant does not assert Wood's claim lacks merit because the State sometimes accedes to requests for

---

shown that it is impossible for him or another petitioner to meet [Chapter 64's] high burden. Gutierrez has not shown it is impossible to receive DNA testing under Chapter 64." (citation omitted)).

postconviction DNA testing. Instead, Defendant—and the district court—showed that Wood failed to demonstrate that it is impossible to obtain postconviction DNA testing in Texas.[8] ROA.2276.

Wood's claim was based entirely on the alleged frequency in which the CCA affirms or overturns lower courts' rulings in Chapter 64 proceedings:

> That the TCCA has rendered Chapter 64 illusory based on the way it construes the statute is borne out by its decisions in DNA testing appeals. For the last 15 years, the TCCA has denied DNA testing in every appeal of a Chapter 64 motion in which Mr. Wood has been able to identify where it was requested.

ROA.20. Wood's argument ignored the obvious fact that the CCA is not the only Texas court that applies Chapter 64—trial courts and intermediate courts do, too. Moreover, as an appellate court, the CCA does not adjudicate an inmate's Chapter 64 motion in the first instance. Tex. Code Crim. Proc. art. 64.05. Rather, the CCA (or an intermediate appellate court, *id*.) affirms or rejects a trial court's ruling, which decision

---

[8]     Relatedly, Wood argues that he has standing to bring this claim because a declaratory judgment that Chapter 64 is an illusory right "would undercut the only reason the TCCA gave for denying testing." Appellant's Br. 29. But the CCA did not deny testing by finding that Chapter 64 is an illusory right. It is unclear, then, how Wood's proffered declaratory judgment would "undercut" the CCA's reason for affirming the denial of his Chapter 64 motion.

is informed in part by deference the reviewing court owes to a trial court's adjudication of subsidiary issues. *See Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) ("[W]e afford almost total deference to a trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues.").

The decision of whether to grant a Chapter 64 motion for postconviction DNA testing is for the trial court, not the CCA. Tex. Code Crim. Proc. art. 64.01(a-1) (requiring the filing of a Chapter 64 motion in "the convicting court"); Tex. Code Crim. Proc. art. 64.03(a)–(e) (providing prerequisites the "convicting court" must find to order postconviction DNA testing and the procedures the "convicting court" must follow). Therefore, even if it were proper to determine the constitutionality of Chapter 64 based solely on how often motions are granted, that evidence is not found in an examination of appellate statistics. ROA.2276 (the lower court's finding that Wood's claim was unpersuasive because it inappropriately restricted its scope to "one aspect"—an appeal to the CCA—of Texas's postconviction DNA testing procedures).

It suffices to say that Wood's claim fails because inmates have not only obtained postconviction DNA testing in Texas but obtained favorable results via Chapter 64. *See, e.g., Cooper v. State*, 673 S.W.3d 724, 730 (Tex. Crim. App. 2023) ("In December 2016, the trial court granted Appellant's [Chapter 64] motion[.]"); *Pruett v. State*, No. AP-77,065, 2017 WL 1245431, at *5 (Tex. Crim. App. Apr. 5, 2017) (the trial court granted inmate's motion in 2015); *State v. Long*, Nos. 10-14-330-CR, 10-14-331-CR, 10-14-332-CR, 10-14-333-CR, 2015 WL 2353017, at *1–4 (Tex. App.—Waco, May 14, 2015) (the trial court granted Chapter 64 motions in 2012, and the appellate court affirmed the finding that a movant "would not have been convicted had the results of the DNA testing been available at trial"); *Wilson v. State*, No. 74,390, 2003 WL 1821465, at *2 (Tex. Crim. App. Mar. 26, 2003) ("In fact, numerous trial courts have granted DNA testing for convicted persons who satisfy the requirements of Articles 64.01 and 64.03."). Indeed, if Chapter 64 is not unconstitutional in all its applications, and it is not, Wood's claim *necessarily* failed. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, or course, the most difficult

challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

Wood accepted this heavy burden, *see* Appellant's Br. 23, and framed his claim as requiring a showing that the CCA's construction of Chapter 64 operated as an "automatic barricade" to testing, *id*. at 22. But Wood *admits* that inmates have obtained postconviction DNA testing in Texas. Appellant's Br. 25 ("Mr. Wood recognizes that there are a few examples of individuals receiving DNA testing, but only when the State agreed to permit it or when the State decided not to file an appeal of a lower court granting it."). So Chapter 64 is not an illusory right, and there is no "automatic barricade," Appellant's Br. 24. And because inmates have indisputably availed themselves of the right to postconviction DNA testing, Wood's claim failed to state a plausible claim for relief. This was particularly true where Wood did not allege the right to postconviction DNA testing under Chapter 64 was illusory because a particular provision of the statute was constitutionally deficient or the CCA authoritatively construed the statute in a particular way. Instead, he argued broadly that the CCA has not authorized testing under the statute. ROA.19–20. As the district court held, ROA.2276, this utterly

failed to show Chapter 64 on its face or as authoritatively construed by the CCA violated procedural due process.

Wood tries to deflect from the fact that inmates have obtained postconviction DNA testing under Chapter 64 by asserting it has only happened where the State agreed to it or did not appeal a lower court's decision granting it. Appellant's Br. 25. This does nothing to counter Defendant's showing that Chapter 64 is not an illusory right. Indeed, if the CCA had authoritatively construed Chapter 64 in such a way that created an "automatic barricade" to testing, the lower courts—bound, as they are, by the CCA's holdings[9]—could not grant testing either. But that is obviously not the case. Moreover, it goes without saying that a prosecuting office's decision of whether to agree to testing or to appeal a lower court's ruling is informed by a wide range of discretionary considerations, including the likelihood of succeeding on appeal. Wood fails to show that the exercise of such discretion is either inappropriate or relevant to whether Chapter 64 is an illusory right. To the degree it might be relevant, it only serves to underscore the relatively few cases—

---

[9]     *See Kiffe v. State*, 361 S.W.3d 104, 109 (Tex. App. Houston [1st Dist.] 2011) ("As an appellate court, we are duty bound to follow precedent issued by the Texas Court of Criminal Appeals in this matter.").

little more than one per year over the last fifteen years, by Wood's count, ROA.20—that reach the CCA after being subjected to winnowing by adversarial testing in the lower courts.

In addition to improperly narrowing the inquiry to one court's decisions in Chapter 64 cases, Wood also erroneously focused only on cases where the defendant has been sentenced to death. ROA.20 n. 7. Chapter 64 provides an avenue to seek postconviction DNA testing to convicted persons in capital *and* non-capital cases. *See* Tex. Code Crim. Proc. art. 64.05 (providing for the manner of appeal for both capital and non-capital cases). Therefore, a large number of Chapter 64 appeals are resolved by intermediate courts. *See e.g., In re Robertson, Sr.,* No. 03-19-282-CR, 2021 WL 1312589, at *1 (Tex. App.—Austin Apr. 8, 2021); *Evans v. State*, 628 S.W.3d 358 (Tex. App—Ft. Worth 2021); *Ambriati v. State,* No. 09-15-65-CR, 2015 WL 6998616, at *1 (Tex. App—Beaumont Nov. 12, 2015). Chapter 64 appeals to the CCA are but one way in which convicted persons in Texas can avail themselves of the benefits of postconviction DNA testing. Wood's myopic focus on one piece of Chapter 64's procedures failed to demonstrate that the right to postconviction DNA testing under Chapter 64 was illusory. ROA.2276.

Notably, Wood's selected timeframe has no practical relevance. In his discussion on the allegedly novel way the CCA construed Chapter 64's unreasonable-delay element, for instance, Wood referenced cases outside the timeframe in which the CCA decided in the *movant's* favor. ROA.23. Those cases demonstrate that the CCA indeed decides Chapter 64 appeals in the defendant's favor and that it is disingenuous to pick a random period of time as proof that the CCA never rules in a certain way. In fact, Wood created a false impression by using the past fifteen years as the basis for examining the frequency in which Chapter 64 motions succeed. Since 2013, the Texas Code of Criminal Procedure Article 38.43 has required all biological evidence in death penalty cases to be DNA tested prior to trial. That would necessarily limit the postconviction testing requests during most of the fifteen-year period Wood addressed and skew any resulting statistics.

Finally, Wood's argument ignored those situations where the State agrees to post-conviction testing, as was done in this case with the items tested in 2010, ROA.48. *See e.g., Skinner v. State*, 665 S.W.3d 1, 10–16 (Tex. Crim. App. 2022) (summarizing Chapter 64 proceedings); Findings of Fact and Conclusions of Law, *Irvan v. State*, No. 864928 (180th Dist.

Ct., Harris Co. Tex., Oct. 10, 2024) (trial court's order following agreed DNA testing). By definition, when there is an agreement between the parties, there is no appeal. Therefore, again, appellate statistics cannot represent how most Chapter 64 requests are resolved, and the lower court properly declined to limit the scope of its review of whether Chapter 64's procedures are violative of procedural due process. ROA.2276. And as noted above, the exercise of prosecutorial discretion to agree to postconviction DNA testing—which discretion may well be informed by the same considerations as those outlined in Chapter 64's prerequisites— supports the conclusion that Chapter 64 is not an illusory right.

Even assuming Wood's allegations were true, they created nothing more than a suspicion of a legally cognizable right of action. *See Twombly*, 550 U.S. at 556–57. Under *Osborne*, Wood was required to demonstrate that Texas's procedures "are fundamentally inadequate to vindicate the substantive rights provided" by Chapter 64. *Osborne,* 557 U.S. at 69–71. Wood's argument that the CCA's construction of Chapter 64 rendered its benefits illusory entirely failed to do so. The lower court's judgment in that respect should be affirmed.

### D.    Wood's claim challenging Chapter 64's unreasonable-delay element is baseless.

Chapter 64 requires a movant to prove his request for postconviction DNA testing "is not made to unreasonably delay the execution of sentence or administration of justice." Tex. Code Crim. Proc. art. 64.03(a)(2)(B). The requirement that DNA testing "must have been diligently pursued" is similar to requirements imposed "by federal law and the law of other States, and they are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Osborne*, 557 U.S. at 70 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)). Indeed, the federal counterpart, the "model for how States ought to handle" enactment of postconviction DNA testing schemes, *id.* at 63, presumes untimeliness if the request is made five years after its enactment or three years after conviction, 18 U.S.C. § 3600(a)(10)(B). Consequently, Wood's claim challenging the state court's application of Chapter 64's unreasonable delay element to him, necessarily fails.[10] *See Alvarez v. Attorney General*

---

[10]    As noted above, Wood's as-applied challenge to the CCA's judgment with respect to Chapter 64's unreasonable-delay element was plainly an inappropriate attack against the state court judgment rather than a facial challenge to Chapter 64's procedures. Wood's belabored discussion in his

*of Fla.*, 679 F.3d 1257, 1266 n.2 (11th Cir. 2012) ("In short, inasmuch as Florida's DNA access procedures either mirror or are more applicant-friendly than the Alaska and federal statutes endorsed in *Osborne*, Florida's postconviction DNA access procedures plainly do not offend [due process]."); *Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237, 1263 (11th Cir. 2010) ("Alabama's procedures pass muster if they compare favorably with Alaska's."); *McKithen v. Brown*, 626 F.3d 143, 153–54 (2d Cir. 2010) (holding that New York's statutory framework providing for DNA testing was adequate because its standards were less "restrictive and difficult to meet" than the Alaska standard at issue in *Osborne*). Nonetheless, Wood fails to show the CCA's application of Chapter 64's unreasonable-delay element in his case was violative of due process.

Indeed, Wood's second claim failed even to allege Chapter 64's unreasonable-delay element or that the CCA's authoritative construction of it was "fundamentally inadequate to vindicate the substantive rights

---

complaint about the CCA's evaluation of the facts of his case, and his complaint that the CCA's decision was inconsistent with its precedent, ROA.9–17, 23–26, illustrate that his claim amounted to nothing more than an inappropriate end-run around *Rooker-Feldman*'s limitation on federal court jurisdiction.

provided." *Osborne*, 557 U.S. at 69. Instead, Wood's challenge to Chapter 64's unreasonable-delay element was based on his allegation that the CCA interpreted the element in a novel way in his case that deprived him of notice. ROA.21. Wood's claim failed to state a plausible claim for relief, and the district court properly dismissed it. ROA.2277–78.

Wood argued that "[w]hile unreasonable delay provisions may in the abstract be permissible parts of state DNA testing statutes, the TCCA's construction of this provision violates due process." ROA.21. The entire argument was based on Wood's assertion that, prior to his case, the CCA had construed Chapter 64 in such a way that unreasonable delay was found only if the movant had an active execution date when a Chapter 64 motion was filed. ROA.21–24. However, Wood misread the CCA's precedent.

By the time Wood filed his first Chapter 64 motion in 2010, he was on notice of the State's plan to seek an execution date—he had an execution date prior to that filing. ROA.80. The execution was stayed when the CCA authorized a subsequent habeas application to allow Wood to raise a claim alleging ineligibility for capital punishment due to his purported intellectual disability. ROA.80. It was during the time that the

intellectual-disability claim was pending that Wood began his DNA testing motions. ROA.79–80. Wood continued filing amended motions after the intellectual-disability claim was resolved. *See Wood*, 693 S.W.3d at 330–36. Specifically, Wood's April 3, 2015 motion was hastily filed after being told that the State was seeking a new execution date. *See* ROA.531–32 (the State's explanation that Wood's 2015 motion "was filed only in response to [the trial court's] assertion that an execution date would be set"). Furthermore, as the CCA noted, in 2019, although his intellectual-disability claim had been resolved, Wood used his pending Chapter 64 requests to argue against the setting of an execution date. *Wood,* 693 S.W.3d at 336.

Additionally, as noted above, the fact that Chapter 64 is applicable to convictions beyond capital murder demonstrates the absurdity of Wood's argument that the CCA has authoritatively construed the unreasonable-delay provision as hinging on the existence of an execution date. *See* Tex. Code Crim. Proc. art. 64.05. Such a theory would render every Chapter 64 motion in a non-death penalty case timely regardless of the actual facts of the case.

Wood also argued that "While in some instances the TCCA would use other factors in its justification for finding unreasonable delay, *plainly the presence of an execution date was the critical factor* in this determination. When no execution date was set or imminent, the *TCCA routinely would not even address the delay prong in death penalty cases.*" ROA.24. But it cannot reasonably be argued that the CCA authoritatively construed Article 64.03(a)(2)(B) without mentioning it. The CCA decided the issues that it was presented with. *See e.g. Leal v. State,* 303 S.W.3d 292, 296 (Tex. Crim. App. 2009) ("Appellant states that the issue presented in his current appeal is whether he has established under Chapter 64 that he is entitled to have forensic testing performed on biological material introduced as evidence in his capital-murder trial.")

Wood's dilatoriness was an appropriate basis on which the CCA denied DNA testing, and Wood fails to prove that the timeliness requirement of Chapter 64 is fundamentally unfair. *Cf. Cromartie v. Shealy*, 941 F.3d 1244, 1256 (11th Cir. 2019) (finding that the due diligence requirement in Georgia's postconviction DNA testing scheme did not violate due process).

In *Reed v. State,* the CCA specifically listed factors to be used in determining whether a Chapter 64 motion was brought for unreasonable delay.[11] 541 S.W.3d 759, 778 (Tex. Crim. App. 2017). Consistent with its opinion in *Reed*, in Wood's case, the CCA discussed a number of factors that lead to the conclusion that Wood failed to demonstrate that his DNA request was not made for the purpose of delay, including the existence or anticipation of an execution date. *Wood*, 693 S.W.3d at 329–40. As the CCA explained,

> The statute "does not contain set criteria a court must consider in deciding whether a movant satisfied his burden that his request is not made to unreasonably delay a sentence's execution," but circumstances that may be considered include "the promptness of the request, the temporal proximity between the request and the sentence's execution, or the ability to request the testing earlier. But cases will "turn on the discrete facts" they present and there is "no definitive criteria for answering this inherently fact-specific and subjective inquiry."

*Id.* at 329 (quoting *Reed,* 541 S.W.3d at 778).

---

[11]    Wood complained that because *Reed* was decided after Wood sought DNA testing he did not have notice that a determination of the delay provision required fact-based inquiry into factors beyond the existence of an execution date. ROA.26. However, the *Reed* opinion cited to previous decisions, demonstrating that the principle was not a new one. *Reed,* 541 S.W.3d at 778.

The CCA identified the piecemeal nature of his litigation tactics as a factor in favor of finding unreasonable delay. *Id.* at 336–39. The CCA described at great length the numerous Chapter 64 and ancillary pleadings Wood filed during the proceedings. *Id.* at 329–40 (describing the four DNA motions, motions for extension, motions to recuse the trial court, and motions to remove the District Attorney pro tem, as well as the plainly dilatory nature of the filings). However, the problem was not merely the number of pleadings, but the fact that Wood waited until the previous roadblock was finally cleared before filing his next motion without regard for the fact that the motion should have been filed earlier. *Id.* at 338. The court stated,

> Even if the ancillary motions had all been legitimate in the abstract, [Wood] doled many of them out one at a time to further delay the proceedings. And regardless of whether there was a procedural default, a number of the motions were clearly filed late.

*Id.*

Additionally, as the CCA identified, "the piecemeal litigation of ancillary motions that could have been filed earlier has continued even on appeal." *Id.* As examples of the piecemeal appellate litigation, the court pointed to the "ancillary motions [that] were clearly without merit"

that the court was forced to deal with in its opinion–motions to remove Judge Richardson as trial judge, motion to certify to the Governor to appoint a judge on appeal, motion to remove the Attorney General as District Attorney Pro Tem, "Motion to Mitigate Harm Caused by the State's Loss or Destruction of Potentially Exculpatory Biological Evidence." *Id.*

This discussion was consistent with the CCA's opinion in *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010). In that case, the CCA established that the movant's actions beyond the mere filing of the Chapter 64 motion will be examined in determining whether the request was made for the purpose of delay. *Id.* Similarly, the CCA in Wood's case relied on its precedent in which it found filings that were less tardy than Wood's nonetheless exhibited unreasonable delay. *Wood*, 693 S.W.3d at 337.

Wood's disagreement with the CCA's conclusion belies any assertion that he is making a facial attack on the constitutionality of Chapter 64's procedures. Instead, he merely disagrees with the CCA's fact findings and its conclusion founded upon those facts. Wood's case simply illustrates that courts cannot anticipate the myriad ways

inmates—particularly death-sentenced ones—might seek to unreasonably delay the execution of their sentence. *See Rhines*, 544 U.S. at 277–78 (it is no secret that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death.").

Wood's attempt to draw out a constitutional infirmity from the CCA's application of a highly generalized, context-specific reasonability standard fails to show Chapter 64's procedures violate procedural due process. Indeed, Wood cannot show he lacked notice and the opportunity to respond to the notion that he exhibited unreasonable delay even without a pending execution date because he fails to identify *any* CCA precedent that expressly limited the scope of its application of the unreasonable-delay element in such a way or that the CCA's precedent misled him to believe his Chapter 64 motions were timely by virtue of the sole fact that they were filed when an execution date was not pending. *Cf. Manning v. Epps*, 688 F.3d 177, 187 (5th Cir. 2012) ("Equitable tolling can be available 'if the plaintiff [was] actively misled by the defendant about the cause of action or [was] prevented in some extraordinary way from asserting his rights.'" (quoting *Lookingbill v. Cockrell*, 293 F.3d 256,

264 (5th Cir. 2002)). Even if Wood could identify such precedent, he could hardly claim he was not on notice that his Chapter 64 requests would be considered dilatory given that the trial judge *in his case* as early as 2011 told Wood they were. *See Wood*, 693 S.W.3d at 332 ("I think the record is clear about what I think about the delays here that have taken place, including the Court's threat to hold you in contempt."), 333 ("I think my findings are quite clear about the delays that have taken place. And it's my opinion at this point, it's inexcusable."), 333–34 (quoting the trial judge's comment that there was "no question" that Wood's Chapter 64 requests were piecemealed).

Wood relies on three opinions by the CCA that he suggests indicated the absence of a pending execution date at the time of the filing of a Chapter 64 motion would support the conclusion that the purpose of the motion was not unreasonable delay. Appellant's Br. 37–38 (citing *Routier v. State*, 273 S.W.3d 241, 245, 259 Tex. Crim. App. 2008), *Raby v. State*, No. AP-74,930, 2005 WL 8154134, at *2 (Tex. Crim. App. June 29, 2005), and *Skinner v. State*, 122 S.W.3d 808, 811 (Tex. Crim. App. 2003)). The CCA in *Routier* did not even address the unreasonable-delay element. *Routier*, 273 S.W.3d at 245, 259. In *Raby,* the CCA found the

Chapter 64 motion was not for the purpose of delay where, unlike in this case, "the trial court ha[d] *never* set an execution date for appellant" and when the initial habeas proceedings had not concluded. *Raby*, 2005 WL 8154134, at *2 (emphasis added). And in *Skinner*, there was no execution date set, and his federal habeas appeal was pending. 122 S.W.3d at 811. In contrast, when Wood filed his first Chapter 64 motion in 2010, he had *already* faced an execution date, and his federal habeas proceedings had concluded more than *two years* earlier, *Wood v. Quarterman*, 552 U.S. 1314 (2008). Wood can hardly claim he detrimentally relied on such precedent where his case was plainly distinguishable from those cases. If Wood relied on the absence of a pending execution date at the time of his Chapter 64 filings as the dispositive factor to show the filings were not for the purpose of unreasonable delay, that was his own litigation choice, one that was not compelled by any CCA precedent.

Wood relies on the proposition that a due process violation may result from an unforeseeable retroactive expansion of language that appears narrow and precise on its face. Appellant's Br. 35–36 (citing *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001)). But a reasonability standard like Chapter 64's unreasonable-delay provision is hardly as

narrow and precise as Wood attempts to paint it. *See Reed*, 541 S.W.3d at 779. Wood cannot claim a lack of notice that his Chapter 64 filings could be considered dilatory under the statute where (1) the trial court told him they would be, (2) no CCA precedent purported to make the absence of a pending execution date at the time of filing dispositive of the unreasonable-delay analysis, and (3) the CCA precedent on which Wood purportedly relied was plainly distinguishable from the facts of his case.

As the lower court found, Wood failed to identify any precedent that "demonstrate[d] that the presence or absence of an execution date is a critical factor that trial courts must consider in determining whether a motion for DNA testing was made to unreasonably delay a sentence." ROA.2277. The district court's dismissal of this claim was plainly appropriate, and this Court should affirm.

## II. This Court Should Deny Wood's Request for a Stay of Execution.

This Court should deny Wood's request for a stay of execution. A stay of execution "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough,* 547 U.S. 573, 584 (2006) (citing *Nelson v. Campbell*, 541

U.S. 637, 649–50 (2004)). Rather, the inmate must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits. *Id.* (citing *Barefoot v. Estelle*, 463 U.S. 880, 895–96 (1983)). When the requested relief is a stay of execution, a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). A federal court must consider "the State's strong interest in proceeding with its judgment" and "attempt[s] at manipulation." *Nelson*, 541 U.S. at 649–50 (citing *Gomez v. U.S. Dist. Court for Northern Dist of California,* 503 U.S. 653, 654 (1992)).

As demonstrated above, Wood fails to demonstrate a likelihood of success on either of the underlying claims. Neither claim comes near satisfying the *Osborne* standard of demonstrating Chapter 64's procedures are fundamentally inadequate to vindicate the right to postconviction DNA testing, and the district court properly dismissed the claims for that reason. Contrary to Wood's argument, Mot. 10–11, the

district court did not abuse its discretion in denying a stay based on its finding regarding one of the most critical factors, the likelihood of success on the merits, *Nken*, 556 U.S. at 434; *see Walker v. Epps*, 287 F. App'x 371, 375 (5th Cir. 2008) (explaining that "the merits of [the movant's] case are essential to [the court's] determination of whether he will suffer irreparable harm if a stay does not issue").

Further, "[b]oth the State and the victims of crimes have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. Wood killed his victims almost forty years ago. He exhaustively appealed his sentence through both state and federal court, obtaining a stay of execution in 2009. *Wood*, 693 S.W.3d at 330. He has engaged in a course of litigation that plainly demonstrated an intent to piecemeal his filings to unreasonably delay the execution of his sentence. *Id.* at 336–39. As the CCA concluded, this conduct was a "classic sign of purposeful delay," not a diligent effort to obtain relief. *Id.* at 337. Such dilatory tactics underscore why the court should deny this motion for stay. *See, e.g.*, *Bucklew v. Precythe*, 587 U.S. 119, 149–51 (2019). It is not a "rush" to set an execution date for Wood that precipitated the filing of his request for a stay of execution but rather the proliferation of filings

that has continued until mere days before his scheduled execution. Moreover, as the state trial court found, ROA.232, Wood's reliance on the presence of an unknown male DNA profile is unavailing, Mot. 5–6. Wood presents no legitimate reason to delay his execution date any longer. The families of Wood's numerous victims deserve justice for his decades-old crimes.

As noted above, Wood has suggested this Court should stay his execution to await the Supreme Court's decision in *Gutierrez v. Saenz*. ROA.2200. But again, the standing issue in *Gutierrez* is entirely distinct from the merits of Wood's claims, which is the basis on which the district court dismissed his complaint and denied the request for a stay of execution. ROA.2276–79. A stay in these circumstances would be entirely inappropriate.

For the reasons argued above, this Court should deny the requested relief and a stay. Wood cannot overcome the strong presumption against granting a stay or demonstrate that the balance of equities entitles him to a stay of execution. For the same reason, Wood fails to show that he would suffer irreparable harm if denied a stay of execution. Wood cannot show he would be irreparably harmed if denied additional process to

which he has no entitlement. His request for a stay of execution should be denied

## CONCLUSION

For the foregoing reasons, Defendant–Appellee asks that the Court affirm the district court's dismissal of Wood's complaint, affirm the district court's denial of Wood's request for a stay of execution, and deny Wood's current motion to stay his execution.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
   for Criminal Justice

TOMEE HEINING
Acting Chief, Criminal Appeals

s/ Rachel Patton
RACHEL PATTON
Assistant Attorney General/District
Attorney Pro Tem
State Bar No. 24039030
   *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936–1400

Fax: (512) 320–8132
Email: rachel.patton@oag.texas.gov

*Counsel for Defendant–Appellee*

# CERTIFICATE OF SERVICE

I do hereby certify that on March 6, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing (ECF) system of the Court. The ECF system sent a "Notice of Electronic Filing" (NEF) to the following attorney of record, who consented in writing to accept the NEF as service of this document by electronic means:

Jason Hawkins, Jeremy Schepers, Naomi Fenwick, Claire Davis
OFFICE OF THE FEDERAL PUBLIC DEFENDER
NORTHERN DISTRICT OF TEXAS
CAPITAL HABEAS UNIT
525 S. Griffin St., Ste. 629
Dallas, TX 75202

Gregory Wiercioch
Frank J. Remington Center
University of Wisconsin Law School
975 Bascom Mall
Madison, Wisconsin 53706

s/ Rachel Patton
RACHEL PATTON
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. It contains 10,692 words, Microsoft Word for Office 365, Century Schoolbook, 14 points.

<div style="text-align: right">

s/ Rachel Patton
RACHEL PATTON
Assistant Attorney General

</div>

## ELECTRONIC CASE FILING CERTIFICATIONS

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

<div align="right">

s/ Rachel Patton
RACHEL PATTON
Assistant Attorney General

</div>